NORMAN A. ASHE AND RUTH E. ASHE v. TUDOR N. HALL ASSOCIATES, INC.

No. 7930DC74

(Filed 16 October 1979)

**Contracts § 27.2— contract to build house—shifting of chimney—insufficiency of evidence of breach**

    In an action to recover for damages to plaintiffs' house which occurred when the chimney shifted and settled and which allegedly resulted from defendant's breach of contract, the trial court erred in denying defendant's motion for directed verdict, since there was no showing that defendant failed to follow the foundation specifications enumerated in the parties' contract.

APPEAL by defendant from *McDarris, Judge.* Judgment entered 15 September 1978 in District Court, JACKSON County. Heard in the Court of Appeals 26 September 1979.

The plaintiffs allege that they contracted with defendant to build a dwelling, including a chimney and fireplace, on their property in Jackson County, and that after its completion the chimney shifted and settled, damaging the house. They claim that defendant performed the construction negligently and, in the alternative, that defendant breached an implied warranty to construct a dwelling free from major defects.

Plaintiffs were allowed to amend their complaint to allege breach of the construction contract and express warranty. Defendant answered and moved for summary judgment which was granted on the issue of negligence and denied as to breach of contract.

At trial before a jury the male plaintiff testified that the plaintiffs contracted with defendant in June 1972 to construct a "pre-cut" home on plaintiffs' property. Defendant was to add a fireplace which was not supplied by the manufacturer of the home. The house was to be built on a steep slope, with the fireplace resting on land and the rest of the house to be supported by pillars nineteen to twenty feet high.

Plaintiffs, who were living in Florida at the time, saw the house only once while it was under construction. The house was completed in late 1972 or early 1973, and the plaintiffs lived in it for two weeks in the spring and two weeks in the fall during each of the years 1973-76. When plaintiffs arrived in the spring of 1976, "one of the windows on the house was broken and the sliding glass doors were falling out of their enclosure and there was a buckling or tilting in the floor of the house." Plaintiff thought that the house was settling. It did not occur to him that the fireplace could be settling because defendant had told him that he had put it on solid rock and it could not settle. Eventually the roof separated from the walls three-quarters of an inch or so, and the deck tore loose from its pillars.

In the fall of 1976 plaintiffs contracted with a Mr. Pell to tear out and rebuild the fireplace. After Mr. Pell had torn down the fireplace he told them it had been built just on topsoil. Plaintiffs did not attempt to contact defendant about their problem with the house.

Ashe v. Associates, Inc.

Mr. Pell testified that he tore out the chimney, dug three feet down to solid rock, and drilled the rock, put in steel anchors and poured a footer before rebuilding the fireplace. He had been in the building business all his life, and it was his opinion that being built on loose dirt was what had caused the chimney to shift. In addition to replacing the fireplace, Mr. Pell repaired various types of damage to the house that had resulted from the shifting.

The female plaintiff testified that after Mr. Pell looked at the house she went to defendant about the problem, but John Hall in defendant's office told her that defendant had no further responsibility toward the house. He suggested that they contact the man who built the fireplace, but they did not.

Defendant presented the testimony of its vice-president, John Hall, and its secretary-treasurer, Tudor Hall. Both men testified that they had not participated in the building of the house, but that they had inspected it during and after construction, and that in their opinions the house was built to contract specifications. John Hall did not recall the female plaintiff telling him at any time that the fireplace appeared to be sinking, and he did not recall saying that they were no longer responsible for the house. The fireplace was not built on solid rock and he did not recall ever telling the male plaintiff that it was.

Morris Wilson, who had worked for defendant in constructing the house, testified that the foundation of the house was placed on "solid earth" at least 16 inches below ground level. The foundation for the fireplace was concrete with steel rods running through it. The house was built in accordance with the contract specifications.

The jury found that defendant had breached the contract and awarded plaintiffs $4750. Defendant appeals.

*Holt, Haire & Bridgers, by R. Phillip Haire, for plaintiff appellees.*

*Rodgers, Cabler & Henson, by J. Edwin Henson, for defendant appellant.*

ARNOLD, Judge.

Issues submitted to the jury in this case were as follows:

(1) Did the plaintiff and defendant enter into a building contract as alleged in complaint?

ANSWER: Yes

(2) Did the defendant breach this contract as alleged in complaint?

ANSWER: Yes

(3) What amount of damages, if any, are the plaintiffs entitled to recover of defendant?

ANSWER: $4,750

The crucial question we face on this appeal is whether the evidence, considered in the light most favorable to the plaintiffs, shows a breach of contract.

The contract includes the following specifications: "Foundation: 1. Concrete pier on concrete footings 2. Below frost line 3. Steel reinforcing rod in piers and footings." Defendant's employee who supervised the construction testified that "[t]he foundation was dug to below the frost line. The piers were made of cement blocks and were poured solid with steel rods reinforced." This testimony is uncontradicted, and it is defendant's position that this showing of compliance with the contract specifications settles the matter. Plaintiffs contend, however, that Paragraph Seven of the contract indicates that something more was required. That paragraph reads, in pertinent part: "This agreement covers construction of the above described residence on a clear and level lot. Should the slope or elevation of the lot be such as to require extra foundation block or fill dirt under the slab, pool deck, patio, drives or walks, over and above that which would be required for the normal two course foundation specified in the plans, the expense of same will be borne by the Owners."

It is undisputed that plaintiffs' house was constructed on a steep slope, and that both parties were aware of this before the contract was executed. We find that the ordinary meaning of the quoted portion of Paragraph Seven simply requires plaintiffs to pay for any extra fill dirt or foundation block that might be required during construction. Paragraph Seven does not affect the foundation specifications enumerated in the contract.

Moreover, there is neither allegation nor proof that the lack of fill or blocks in any way related to the defect in the chimney. The uncontradicted evidence shows that the problem with the chimney resulted because it was built on loose dirt. The question of whether defendant was negligent is not before us since plaintiffs did not appeal from the summary judgment entered in favor of defendant on the issue of negligence. (The possibility of tort liability for the negligent performance of a contract was discussed by this court in *Ports Authority v. Roofing Co.*, 32 N.C. App. 400, 232 S.E. 2d 846 (1977), but rejected by our Supreme Court on appeal of that decision, 294 N.C. 73, 240 S.E. 2d 345 (1978).)

This action was for breach of a contract. We conclude that no evidence was presented to show a breach of contract. Therefore, denial of defendant's motion for directed verdict was error. It is unnecessary to discuss defendant's remaining assignments of error.

Reversed.

Judges WEBB and WELLS concur.